UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REBEKAH A.,

            Plaintiff,

  v.

ANDREW M. SAUL,
Commissioner of Social Security,

            Defendant.

CASE NO. C19-5814-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1987.[1]  She has two Associates degrees and previously

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

worked as a cashier checker, stock clerk, lubrication servicer, sterilizer, general clerk, medical record clerk, and phlebotomist. (AR 38, 49-50, 647.)

Plaintiff protectively filed DIB and SSI applications on May 26, 2016, alleging disability beginning October 6, 2015. (AR 224-34.) The applications were denied initially and on reconsideration. ALJ Malcolm Ross held a hearing on April 12, 2018, taking testimony from plaintiff and a vocational expert (VE). (AR 30-55.) On October 1, 2018, the ALJ issued a decision finding plaintiff not disabled. (AR 15-24.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 2, 2019 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe: Type II diabetes mellitus without complication; unspecified trauma and stressor related disorder; major depressive disorder; and obesity. He found other conditions non-severe, not medically determinable, or unsupported. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform light work, with the following additional limitations:  frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; limited to work consisting of simple, routine, repetitive tasks and tasks with well-learned, detailed instructions; able to tolerate occasional workplace changes; and should have only occasional, superficial interaction with the public.  With that assessment, and the assistance of the VE, the ALJ found plaintiff able to perform past work as a sterilizer and general clerk.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  Finding plaintiff not disabled at step four, the ALJ did not proceed to step five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing medical opinions and her symptom testimony,

in failing to find a severe somatoform disorder, and in the finding at step four.  She requests remand for further proceedings.  The Commissioner argues the ALJ's decision should be affirmed.

## Medical Opinions

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).[2]  Where the record contains contradictory opinions, as in this case, the ALJ may not reject a treating or examining doctor's opinion without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoted source omitted).

A.   Ajay Sharma, M.D.

Plaintiff's treating physician, Ajay Sharma, M.D., wrote a May 18, 2016 letter stating: "It is my medical opinion that [plaintiff] [h]as Diabetes, Depression, chronic pain, multiple joint pain and due to these conditions cannot work presently."  (AR 450.)  On June 1, 2016, Dr. Sharma completed a Physical Functional Evaluation for the Department of Social and Health Services (DSHS).  (AR 439-43.)  Dr. Sharma identified diagnoses of "nausea, weakness, depression, [chronic ("Chr")] pain", with a severity rating of "marked." (AR 440.)  Dr. Sharma also opined plaintiff should avoid lifting more than five pounds, extreme temperatures, and chemicals, and was severely limited, meaning unable to meet the demands of sedentary work.  (AR 441.)

The ALJ gave little weight to Dr. Sharma's opinion, finding it inconsistent with the treatment notes and the medical record as a whole.  (AR 22.)  The ALJ also found the opinion "presented in a confusing and vague manner[,]" explaining:

> Dr. Sharma's brief notes identify the claimant's diagnoses as

---

[2] Because plaintiff filed applications prior to March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

> "nausea, weakness, depression [illegible] pain." These "diagnoses" other than depression simply mirror the claimant's symptom allegations and are unhelpful. Dr. Sharma then lumps them together and concludes they cause the claimant marked impairment. What the "diagnoses" impair, however, is unclear because, instead of following the instructions and listing the affected basic work activities from (a) to (n), Dr. Sharma wrote "4."

(*Id*.) The ALJ therefore found the report and opinions to be of little help in understanding plaintiff's condition and limitations.

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports the ALJ's decision and the ALJ's interpretation of the evidence is rational, the decision should stand. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

An ALJ may reject a medical opinion based on inconsistency between the opinion and the doctor's treatment notes, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and between the opinion and the medical record, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ here reasonably found inconsistency on both counts. Earlier in the decision, for example, the ALJ pointed to notes from Dr. Sharma reflecting plaintiff's presentation with normal affect (AR 375, 382, 498, 507), normal behavior, judgment, and thought content (AR 498), and other evidence showing she had not been compliant with her medication, including her failure to take metformin for a year (*see* AR 504, 539), raising a question as to the severity of her symptoms.

The ALJ also accurately depicted Dr. Sharma's opinion as presented in a confusing and vague manner; grouping together diagnoses/symptoms and providing an overall severity rating, rather than the form's request to indicate specific work activities implicated by each diagnosis and

respective severity of limitations. Contrary to plaintiff's contention, the ALJ did not find the evidence from Dr. Sharma ambiguous or the record inadequate to allow for proper evaluation of the evidence, implicating a need to further develop the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (internal quotation marks and quoted sources omitted), and *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.")  The ALJ reasonably took issue with Dr. Sharma's vague and confusing *presentation* of his opinion.  The ALJ, moreover, had ample evidence upon which to base his conclusion, including years of Dr. Sharma's own treatment notes and contradictory opinions from an examining doctor and from non-examining State agency doctors.  *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ found doctor's description of a claimant's "'limited' or 'fair'" abilities not useful because they failed to specify functional limits; finding ALJ could reasonably find such characterizations inadequate for determining RFC, and no duty to further develop the record, because the ALJ had years of medical records and multiple other medical opinions to inform her decision; ALJ may "take into account the quality of the explanation when determining how much weight to give a medical opinion.")  The ALJ therefore did not err in considering the opinion of Dr. Sharma.

B.  <u>Curtis Greenfield, Psy.D.</u>

Dr. Curtis Greenfield completed a Psychological/Psychiatric Evaluation of plaintiff on behalf of DSHS on May 26, 2016.  (AR 434-38.)  He diagnosed major depressive disorder, recurrent, severe, and a "rule out" diagnosis of somatic symptom disorder, with predominant pain, persistent.  (AR 435.)  He assessed marked effect on plaintiff's ability to perform activities in a

schedule/ maintain regular attendance/be punctual, adapt to changes in a routine work setting, maintain appropriate behavior in a work setting, and complete a normal work day/week.  (AR 436.)  Dr. Greenfield opined plaintiff would likely benefit with ongoing individual therapy, participation in supportive groups, and access to her prescribing professional and medications, and stated:  "In time this client will likely be able to return to the workforce."  (AR 437.)

The ALJ gave little weight to Dr. Greenfield's opinion "as it is inconsistent with plaintiff's reported activities, which include doing household chores and playing board and video games with others."  (AR 22-23.)  An ALJ may reject a doctor's opinion based on inconsistency with a claimant's level of activity.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  In this case, the ALJ reasonably found evidence of plaintiff's activities inconsistent with her testimony as to the alleged degree of impairment, noting her ability to perform household chores, including dishes, vacuuming, and laundry; shop and prepare meals; tend to all of her activities of daily living, including managing money, without assistance; drive; use a computer and smart phone; feed and walk her dogs; be involved in meet-ups to play games and be social, including meeting friends and playing games once or twice a week; and enjoyment of arts and crafts.  (AR 21 (citations to record omitted).)  This level of activity could reasonably be construed as inconsistent with the degree of impairment opined by Dr. Greenfield, such as the assessed marked effect on plaintiff's ability to maintain appropriate behavior in a work setting.

However, standing alone, the Court does not find this reason sufficient to support the ALJ's decision.  Plaintiff reported to Dr. Greenfield that "she does not have a regular time that she wakes up and that because of insomnia and pain that she does not keep a sleep schedule[,] . . . spends her day walking her dogs, cleaning the house, reading, playing games, and performing other meaningful tasks[,] . . . [and] is able to tend to all of her own [activities of daily living] including

the management of money without assistance." (AR 435.) As such, in rendering his opinion, Dr. Greenfield was in large part aware of the activity considered by the ALJ. Without any additional reason for discounting Dr. Greenfield's opinion, the Court finds the ALJ's decision to assign it little weight to lack the support of substantial evidence.

C.      Mary Lemberg, M.D.

Consultative psychological examiner Dr. Mary Lemberg completed an evaluation of plaintiff on January 16, 2017. (AR 645-50.) Dr. Lemberg diagnosed unspecified trauma and stressor-related disorder, rule out post-traumatic stress disorder (PTSD), and, as discussed below, appeared to repeat Dr. Greenfield's diagnoses of major depressive disorder, recurrent, severe and somatic symptom disorder with predominant pain, persistent, while failing to include Dr. Greenfield's identification of the latter as a "rule out" diagnosis. (AR 645, 649.) Dr. Lemberg stated plaintiff's depression and anxiety had not responded to three anti-depressant trials, that she had experienced mild improvements from a year-and-a-half of weekly psychotherapy, has chronic pain and medical conditions that are treatment barriers, comorbid trauma-related symptoms, psychosocial stressors, and limited supports that worsen her prognosis, and her condition was not likely to improve within twelve months. (AR 650.) Dr. Lemberg opined:

> She cannot consistently sustain simple and other tasks due to depression and her physical conditions and pain are significantly limiting. She has difficulty with forming and maintaining social relationships and would struggle in a work environment as she previously has. She has never been able to sustain employment due to frequent absences due to her physical and psychiatric conditions, with her psychiatric conditions being a significant factor, though she believes her medical conditions are a relatively larger factor. Even without her physical conditions, however, it seems the psychiatric conditions would likely interfere with work activities. Given the chronicity of her symptoms and history, I do not see this pattern improving in the future. She would be unable to sustain employment beyond a relatively short period of time or tolerate the usual stressors in a work environment.

ORDER
PAGE - 8

(*Id.*)

The ALJ gave little weight to Dr. Lemberg's opinion, finding it inconsistent with the contemporaneous mental status examination (MSE) and the record as a whole. (AR 22.) He stated: "It is apparent Dr. Lemberg did not have the information I had at the hearing, which included the claimant's function report detailing fairly extensive activities that are inconsistent with Dr. Lemberg's opinion." (*Id.*)

As stated above, an ALJ may rely on inconsistency with the medical record and with a claimant's level of activity in rejecting a doctor's opinion. *Tommasetti*, 533 F.3d at 1041; *Rollins*, 261 F.3d at 856. An ALJ may also reject an opinion based on discrepancy or contradiction between the opinion and the doctor's own notes, observations, or findings. *See Bayliss*, 427 F.3d at 1216.

In this case, the ALJ reasonably concluded Dr. Lemberg was not aware of the extent of plaintiff's activities. Plaintiff reported to Dr. Lemberg that, at baseline, she loves doing crafts, "though depression makes it feel like there is no point and takes the joy away;" has no difficulty managing money; goes grocery shopping once or twice a month, usually with someone to help; "tries to do the chores, though she has to stop and rest after just a few dishes[,] [b]ending and vacuuming are really difficult[,] [s]he tries to do what she can, though she is limited[,]" cannot take out the trash, as the dumpster is a block away, and cannot reach and bend to unload the dishwasher; cooks weekly; leaves home once or twice a week, "usually just for appointments"; bathes every other day, sometimes every third day, and more when pain is increased; and can and usually does drive. (AR 649.) The record contained evidence plaintiff was more active than she reported to Dr. Lemberg. (*See, e.g.*, AR 639 (plaintiff reported to Dr. Gary Gaffield in January 2017: "She is single, lives with a friend. She drives. She is able to bathe and dress herself, prepare food, reads, watches TV and works on a computer. She . . . has dogs and cats. She maintains her

. . . apartment. . . . She enjoys doing crafts. She is not interested in interacting with family and friends. A typical day is up to 1- [sic], watches some TV, takes a shower, works on her chores, crafts to lunch, after lunch sits around and plays games, watches TV, read, does some chores, prepares dinner. After dinner she and her boyfriend will go shopping[,] . .. come home, play some games, watch a movie, goes to bed at about 11:30."); *see also* AR 284-87 (plaintiff reported she, *inter alia*, feeds her dogs and tries to walk them for short periods if able; prepares her own food; does dishes, vaccuming, and laundry when able; goes outside daily and gets around by walking, driving, and riding in a car; reads, plays games, and makes crafts weekly as able, and tries to meet up with friends to play games once or twice a week if able).)

The ALJ also reasonably construed the record and Dr. Lemberg's MSE as inconsistent with the opinion plaintiff could not consistently sustain simple and other tasks. Dr. Lemberg's MSE included observations suggesting some degree of impairment, such as that plaintiff seemed quite anxious and depressed, breathed heavily, with her voice cracking and audibly nervously swallowing at times, reddened and was on the verge of tears in discussing her trauma history, and had low, cracking, slowed speech, and dysphoric and anxious affect. (AR 648.) However, while initially erring in counting and spelling tasks, plaintiff corrected the errors on second attempt, had full orientation, intact registration, remote memory, and recall, demonstrated other fund of knowledge, accurately calculated "serial 7s", followed a three-step command, albeit uncertainly, identified similarities/differences, and demonstrated intact insight and judgment. (AR 648-49.) The ALJ rationally construed plaintiff's abilities on testing to be inconsistent with an opinion she could not consistently perform even simple tasks. The ALJ had also earlier described the treatment record observations of normal affect, behavior, judgment, and thought content (*see* AR 21); MSE testing with Dr. Greenfield, wherein plaintiff recalled three-of-three words after a short delay,

followed a three-step command, and completed serial three subtractions (AR 21, 438 (also finding orientation, perception, fund of knowledge, abstract thought, and insight and judgment within normal limits)); and, as discussed below, evidence associated with her medication and treatment (*see* AR 21).  The ALJ thus provided several well-supported specific and legitimate reasons for the weight assigned the opinion of Dr. Lemberg.

Symptom Testimony

The rejection of a claimant's symptom testimony requires the provision of specific, clear, and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citation omitted).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.[3]

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record.  (AR 20-21.)  He provided several specific, clear, and convincing reasons in support of that conclusion, including inconsistency with the medical evidence, *Carmickle*, 533 F.3d at 1161; *Tonapetyan*, 242 F.3d at 1148; inconsistency with evidence of her activities, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039; and lack of treatment, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  With respect to treatment, the record contained evidence of a failure to take prescribed medications; that, despite her complaints of limiting mental health symptoms, she had not sought treatment from a psychiatrist, relying on her primary care

---

[3] Effective March 28, 2016, the SSA eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character.  Social Security Ruling 16-3p.  The Court continues to cite to relevant case law utilizing the term credibility.

physician to prescribe psychotropic medications; and that, while she had engaged in counseling, the treatment notes "are so sparse and vague that it is difficult to ascertain the frequency, duration, and focus of treatment." (AR 21 (citations to record omitted).)

Plaintiff offers a different interpretation of the medical record and evidence of her activities. However, the ALJ's alternative interpretation is at least equally rational and not properly disturbed. *Morgan*, 169 F.3d at 599. Plaintiff also takes issue with the ALJ's failure to inquire into why she chiefly sought treatment through her primary care provider or to question her at length about the effectiveness or side effects of her medications or counseling. Yet, plaintiff does not identify evidence explaining her failure to comply with or seek treatment, or of significant, ongoing medication side effects. The record, in fact, shows her repeated reports her prescribed medications were helpful, her stability when taking medications, and her denial of side effects. (*See, e.g.*, AR 375, 377, 388, 395, 527, 657, 670, 674.) The record also reflects plaintiff had adequate opportunity to testify regarding her impairments and limitations. (*See* AR 47-48.) The ALJ's evaluation of plaintiff's symptom testimony has the support of substantial evidence. The ALJ should, however, reconsider plaintiff's testimony as warranted by further consideration of the evidence on remand.

## Somatoform Disorder

Plaintiff received a rule-out diagnosis of somatic symptom disorder from Dr. Greenfield. (AR 18, 435.) The ALJ found Dr. Lemberg subsequently gave a somatic symptom disorder diagnosis, "based on what she thought was a previous diagnosis." (*Id*.) The ALJ found Dr. Lemberg's diagnosis not supported by her examination notes and insufficient evidence for the diagnosis. The ALJ, regardless, accounted for "all supported symptoms" in the "conservative [RFC] at the light level." (*Id*.)

ORDER
PAGE - 12

Plaintiff avers error at step two.  She argues Dr. Lemberg confirmed Dr. Greenfield's rule-out diagnosis by noting plaintiff's persistent complaints of chronic pain and stating, "[e]ven without her physical conditions, however, it seems the psychiatric conditions would likely interfere with work activities." (AR 650.)  She asserts the record reflects her consistent reports of chronic pain, despite, as the ALJ observed, few clinical signs of objective findings to support her complaints.  (*See* AR 18.)  She asserts harm given the absence of any indication the ALJ considered limitations from a somatoform disorder.

At step two, a claimant must make a threshold showing her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28).  However, before considering severity, there must be a determination a medically determinable impairment exists. §§ 404.1521, 416.921.  That determination requires objective medical evidence from an acceptable medical source.  *Id*.; SSR 16-3p.  Neither a statement of symptoms, a diagnosis, nor a medical opinion suffices to establish the existence of a medically determinable impairment.  § 404.1521, 416.921.  Pain or other symptoms will not be found to affect the ability to perform basic work activities unless medical signs or laboratory findings show a medically determinable impairment. § 404.1529(b), 416.929(b).

Somatic symptom and related disorders "are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and . . . cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally

ORDER
PAGE - 13

sanctioned behavior or experience[,]" and "may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00B(6).  Symptoms and signs may include, *inter alia*, "pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness." (*Id*.)  To meet the listing, there must be medical documentation of "[s]ymptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder; [o]ne or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or [p]reoccupation with having or acquiring a serious illness without significant symptoms present." *Id*., § 12.07 (claimant must also have extreme limitation of one or marked limitation of two areas of mental functioning, as set forth in 12.00F).

As found by the ALJ, Dr. Lemberg's report appears to merely repeat Dr. Greenfield's diagnoses, but fails to include the "rule out" portion of the somatic symptom disorder diagnosis. (*See* AR 435, 645, 649.)  Contrary to plaintiff's contention, there is nothing in Dr. Lemberg's report to suggest she found limitations from a somatic symptom disorder.  Dr. Lemberg discussed plaintiff's depression, anxiety, and chronic pain, otherwise referring generally to her "physical and psychiatric conditions," and opined plaintiff could not "consistently sustain simple and other tasks due to depression and her physical conditions and pain are significantly limiting." (AR 650.) The statement that, "[e]ven without her physical conditions, . . .it seems the psychiatric conditions would likely interfere with work activities[,]" is not reasonably interpreted as reflecting Dr. Lemberg's assessment of a somatic symptom disorder. (*Id*.)  Instead, Dr. Lemberg opines plaintiff's limitations resulted from her depression, anxiety, chronic pain, and physical conditions.

The ALJ, in sum, reasonably found insufficient evidence supporting the existence of a somatic symptom disorder diagnosis. However, on remand, the ALJ should take care to consider any new evidence bearing on the existence of a possible somatic symptom disorder.

### Step Four

Plaintiff bears the burden at step four of demonstrating she can no longer perform past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). A claimant may be found not disabled based on a determination she can perform past relevant work as actually performed or generally performed in the national economy. SSR 82-61. An ALJ need not render "explicit findings" regarding past work "both as generally performed and as actually performed[,]" and need only make a sufficient finding pursuant to the applicable regulations. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001).

At hearing, the VE testified an individual with the assessed RFC could perform the sterilizer and general clerk jobs and that this testimony did not contradict the Dictionary of Occupational Titles (DOT). (AR 50-54.) The ALJ, in comparing plaintiff's RFC with the physical and mental demands of those jobs, found plaintiff could perform them as actually and generally performed. (AR 23.) He found the VE's testimony consistent with the DOT. Plaintiff asserts the ALJ erred in failing to make sufficient factual findings regarding her work as actually performed and, in relying on VE testimony at odds with the DOT, in finding her able to return to her past work as generally performed. The Court does not find reversible error established.

The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). An ALJ must inquire whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for the conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007); SSR 00-4p. The ALJ

may rely on VE testimony contradicting the DOT, "but only insofar as the record contains persuasive evidence to support the deviation[,]" *Johnson*, 60 F.3d at 1435-36, including either specific findings as to the claimant's functionality or inferences drawn from the VE's testimony, *Light v. Social Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997).

Plaintiff asserts a conflict between the RFC limitation to "simple, routine, repetitive tasks" and the VE's testimony she could perform the "Reasoning Level 3" jobs of sterilizer (DOT 599.585-010) and general clerk (DOT 209.562-010). *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding apparent conflict between an RFC limitation to simple, routine, or repetitive tasks and the demands of level 3 reasoning, which entails the ability to: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.")  The ALJ did not, however, limit plaintiff to simple, routine, or repetitive tasks. Nor was plaintiff limited to the "detailed but uninvolved" instructions provided for in "level 2" work. *See Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1003-04 (9th Cir. 2015) (conflict between limitation to one- and two-step tasks, and level two work requiring carrying out "'detailed but uninvolved written or oral instructions.'") (quoting DOT, App. C). The ALJ found plaintiff capable of performing both "simple, routine, repetitive tasks *and tasks with well-learned, detailed instructions*."   (AR 20 (emphasis added).)  The ALJ also found plaintiff capable of performing jobs she had already performed in the past. The Court, as such, finds no apparent conflict requiring further resolution and no associated error at step four. *Cf. Ralph B. v. Berryhill*, C17-6027-MAT, 2018 U.S. Dist. LEXIS 184956 at *27-28, 2018 WL 5442935 (W.D. Wash. Oct. 29, 2018) (finding no clear conflict between RFC and reasoning level 3 jobs where RFC did not limit plaintiff only to simple

ORDER
PAGE - 16

instructions and included the ability to occasionally perform detailed and complex tasks).[4]

Plaintiff also argues the ALJ failed to provide the necessary "specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work [as she actually performed it], and the relation of the [RFC] to the past work." *Pinto*, 249 F.3d at 844-45 (citing SSR 82-62). However, to the extent it can be said the ALJ erred in not including all necessary findings, the error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (citations omitted).)    First, the ALJ's step four conclusion would be sufficient based alone on the finding regarding past work as generally performed. *See Pinto*, 249 F.3d at 844-45. Second, the record in this case contained the two sources properly relied upon by an ALJ "to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41[,]" *id*. at 845; (AR 38-46, 265-74), and plaintiff does not identify any discrepancy between the evidence of her jobs as actually performed and the ALJ's conclusion.

Plaintiff does not demonstrate error at step four. However, on remand, the ALJ should reassess this step as may be necessary based on further consideration of the evidence.

---

[4] The Commissioner also argues any error would be harmless given the evidence plaintiff entered college at age fifteen, achieved "straight As", and obtained two Associates degrees in geology and criminal justice. (AR 37-38, 647.) *Cf. Zavalin* , 778 F.3d 846-48 (rejecting Commissioner's reliance on fact claimant completed high school, did well in math, and used computer and video games as evidence he was capable of level 3 reasoning given that it ignored claimant's receipt of special education, accommodations, and modified diploma; also noting ALJ did not rely on evidence of computers or video games and absence of evidence regarding their use). The Commissioner also notes plaintiff's prior work as a stock clerk, which required level 4 reasoning (*see* AR 49). *See, e.g., Goldsmith v. Berryhill*, No. 17-501, 2018 WL 1384461 at *4 (C.D. Cal. Mar. 15, 2018) ("Even assuming that Plaintiff's mental impairments diminished her work-related functional capacity after her alleged onset date, her ability to perform jobs requiring a higher reasoning level in the recent past suggests that she likely retains the ability to perform some Level 3 reasoning jobs.") Finding no error, the Court need not consider these arguments.

ORDER
PAGE - 17

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further proceedings.

DATED this <u>4th</u> day of May, 2020.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 18